**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TYRA PERKINS** | **CIVIL ACTION NO.** |
| **VERSUS** | **SECTION** |
| **KAJA RHEA, JOHN DOE BYSTANDER OFFICERS,** | **JUDGE** |
| **CITY OF NEW ORLEANS,** | |
| **NEW ORLEANS POLICE DEPARTMENT** | **MAGISTRATE** |

**FILED: _____**    **_____**

                                                    **DEPUTY CLERK**

<u>**COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

NOW COMES Plaintiff Tyra Perkins, by and through their undersigned counsel, and for this Complaint against Defendants Kaja Rhea, John Doe Bystander Officers, the City of New Orleans, the New Orleans Police Department, hereby states and alleges, as follows:

<u>**PARTIES**</u>

1.

Plaintiff Tyra Perkins is a person of majority domiciled in the State of Louisiana within the Eastern District of Louisiana.

2.

Defendant Kaja Rhea (hereinafter "Defendant Officer Rhea") is a person of majority domiciled in the State of Louisiana. At all times pertinent and relevant to this action, Defendant Officer Rhea was employed as a police officer by the Defendant City of New Orleans, Louisiana, and at all times mentioned herein acted in the course and scope of his employment and under color of law. Defendant Officer Rhea is sued in his individual capacity.

3.

Defendants John Doe Bystander Officers (collectively, "Defendant Bystander Officers") were, at all times pertinent and relevant to this action, employed as police officers by the City of New Orleans, Louisiana, and at all times herein mentioned acted in the course and scope of their employment and under color of law. Defendant Bystander Officers are sued in their individual capacities. The identities of the Bystander Officers are unknown at this time.

4.

Defendant City of New Orleans, Louisiana (hereinafter called "Defendant City"), is a municipal corporation organized and existing under the laws of the State of Louisiana, with the ability to sue and be sued within the State of Louisiana. Defendant City, at all times pertinent and relevant to this action, employed Defendant Officer Rhea and the Defendant Bystander Officers. Defendant City was responsible for the hiring, training, supervision, discipline, administration, policies, customs, practices, operations, management and control of the New Orleans Police Department and its officers, including Defendant Officer Rhea and Defendant Bystander Officers. As such, Defendant City was the final policy maker for the New Orleans Police Department in the areas of law enforcement and training, supervision, and discipline of police officers.

5.

Defendant New Orleans Police Department (hereafter called "Defendant NOPD"), which employed Defendant Officer Rhea and Defendant Bystander Officers, is a department within the Defendant City. Defendant NOPD is also responsible for the conduct that resulted in Plaintiff Tyra Perkins's injuries.

6.

Defendants are liable, jointly, severally, and *in solido,* for the intentional, excessive, and otherwise unconstitutional and tortious conduct as set forth below.

## **FACTUAL ALLEGATIONS**

7.

***The Physical Assault at Popeyes Leading to Involvement of NOPD***

On February 19, 2023, the Perkins family[1] gathered on St. Charles Avenue near its intersection with Erato Street to attend Mardi Gras Festivities, including several parades, namely: Krewe of Okeanos, Krewe of Mid-City, Krewe of Thoth, and Krewe of Bacchus. Candiss Guillen, a family member, had participated in the Krewe of Okeanos parade as a member of the Femme Fatale Krewe Dance Team, so the family came out to support her.

8.

Knowing that they would be on the parade route through the day on February 19, 2023, Adrian Perkins, a retired former regional manager of the Popeyes food franchise, made arrangements with the current regional manager of the franchise, Gregory White, for the family to utilize the restroom facilities at the Popeyes restaurant located at 1243 St. Charles Avenue, New Orleans, Louisiana 70130.

9.

Beginning in the early afternoon hours, and continuing throughout the day, the Perkins family purchased several food and beverage items at Popeyes and utilized the restroom facilities

---

[1]    The Perkins family included Cydney Perkins, Telly Perkins, Adrian Perkins, Willard Jones, Courtney Jones, Oakbel Guillen, Deidre Price, Tyra Perkins, Candiss Guillen, Shannon Conly, Justin Perkins, Destiny DarDar, Missend Perkins, Darrel Perkins, Jr., and others.

with express consent without any problems. Gregory White had interacted with several members of the Perkins family throughout the day.

10.

During the Bacchus parade, Cydney Perkins entered the restaurant and attempted to utilize the restaurant. A young black male employee advised her that she could not use the facilities. She advised him that she had permission from "Uncle Greg" (a term of endearment used by her for a long-time and close family friend). Cydney went back to the group and advised Candiss Guillen (her aunt) that she had been denied access to the restroom by the employee. Candiss Guillen, believing the denial of access was an error, accompanied Cydney back to the restaurant and spoke with the employee who appeared to be very angry that Cydney had returned.

11.

Cydney and Candiss advised the employee that the family had permission from Gregory White to utilize the facilities. The employee pointed to another "manager" in a brown shirt whom he claimed denied them access. Gregory White and the manager in the brown shirt engaged in conversation, and the ladies were allowed to utilize the restroom facilities. Upon exiting the restroom, the young black male employee began to curse at Cydney Perkins and accusing her of lying about being related to Gregory White. Cydney Perkins and the employee exchanged words and he threatened to 'bat the piss out of her.' Candiss Guillen attempted to diffuse the situation between her niece and the employee. However, the employee was out of control. He ran after them out of the store and began assaulting both Cydney Perkins and Candiss Guillen. The employee was being pushed back inside of the restaurant by Gregory White. The door to the restaurant was then locked.

12.

Utilizing their cellular phones, Candiss Guillen and Cydney Perkins summoned family members and the police to the restaurant for assistance. While they waited outside of the restaurant, Popeyes' employees were yelling and threatening them from inside the restaurant. NOPD Officers arrived and brought Candiss Guillen, Cydney Perkins, and other Perkins family members including Plaintiff Tyra Perkins into the restaurant, along with the mother of the Popeyes employee who assaulted them. NOPD officers were investigating the incident. Suddenly, and without warning, Tyra Perkins was pushed out of the front door by an unidentified NOPD Officer into the arms of Defendant Officer Rhea.

13.

Defendant Officer Rhea grabbed Tyra Perkins holding both of her arms in a restrained position close to her body, as her feet dangled in the air. He then walked at least twenty feet from the restaurant towards the street carrying her and brutally slammed her body to the concrete street. Then, with complete indifference for her well-being, he turned his back and walked back towards the store. The entire incident was captured on numerous videos taken by cell phones of witnesses to the incident. Still Photos from the Video are attached as **Exhibit A.** *(Exhibit A, Photos of Incident)*

14.

Tyra Perkins sustained physical injuries as a result of the police brutality she endured at the hands of Defendant Officer Rhea. Additionally, Ms. Perkins experienced mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses since the subject incident. The psychological impact of the abusive conduct she was subjected to led her to take anti-depressant medication.

15.

For these injuries, Plaintiff seeks money damages pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth Amendment to the United States Constitution, and under the laws of the State of Louisiana.

16.

Though the fact here may seem less extreme in comparison to some of the incidents of police brutality that dominate our news cycle and social media websites, this case is no less a "knee on the neck of justice for Black Americans." Ms. Perkins was unarmed; fully cooperative and submissive at all times; brutalized when she was not suspected of any crime; and posed no threat whatsoever. She did absolutely nothing wrong – indeed, she was not even a suspect of wrongdoing at the time that she was brutally attacked by a police officer. Nonetheless,  and for no justifiable reason, the police officer, Defendant Officer Rhea, intentionally grabbed and restrained Ms. Perkins, picked her up off the ground, carried several feet to the street, and slammed to the ground.

17.

Plaintiff Tyra Perkins is a small woman in stature. She is about 5'7" and weighs about 108. She is the current homecoming Queen at McDonogh 35 High School in New Orleans. In contrast, Defendant Officer Rhea is a former Warren Easton football player *(Exhibit B)* and a boxer *(Exhibit C),* as indicated by his Facebook Page photos. Defendant Officer Rhea became a police officer on May 6, 2022. *(Exhibit D, Photos of Ceremony)*

18.

The conduct exhibited by Defendant Officer Rhea is repugnant to basic notions of human dignity, not to mention violative of Ms. Perkins' constitutional rights. The banality of the police interaction here—gratuitous abuse of a relative arriving at a crime scene. There was no "tense, uncertain, and rapidly evolving situation" in which the officer had to make a "split-second judgment" about how much force to use. If law enforcement cannot resist using excessive force against a black woman when circumstances are safe and easy, the situation is virtually certain to turn tragic when the call is more difficult. On the day that Ms. Perkins encountered Defendant Officer Rhea, the law was clear that throwing an unarmed citizen to the ground who is not suspected of committing any crime constitutes excessive force. Yet, Defendant Officer Rhea did it anyway, as other police officers stood by watching him violate Ms. Perkins' constitutional rights, doing nothing to stop him.

19.

The Defendant City which employs these officers should also be held accountable for its failure to train and supervise them with respect to a procedure as routine and frequent as the securing of a crime scene – a situation the city could fully expect its officers to encounter numerous times over the course of their careers. Yet, this failure is no wonder, given the City's track record of failing to discipline its officers when they use excessive force. Consistent with that pattern, the City could not be bothered to investigate Defendant Officer Rhea's use of excessive force even after Ms. Perkins filed a formal complaint against him shortly after the incident.

20.

The unnecessary and abusive use of force in this case, the indifference with which the dignity of a citizen was violated, and the Defendant City's deliberate failure to train, supervise and discipline such conduct reinforce a history of distrust between the police and the communities they are charged to serve and protect. This leaves citizens – especially people of color like Ms. Perkins – fearful of seeking assistance from the police, even when they are the wronged party. Accountability is necessary to restore this trust. Excessive force is no less unconstitutional when it results from abusive handling by the police, even when they are the wronged party.

21.

Defendant Officer Rhea and the Defendant Bystander Officers who failed to intervene should be held jointly and severally liable for using excessive force on Ms. Perkins. So too should the Defendants City and NOPD be held liable for failing to train, supervise and discipline its officers in their use of excessive force.

22.

***Plaintiff Tyra Perkins Filed a Formal Complaint Against Defendant Officer Rhea***

On February 28, 2023, Tyra Perkins filed a formal complaint via email with the New Orleans Police Department regarding Defendant Officer Rhea's use of excessive force against her. In the complaint, she recounted the circumstances leading up to the brutal assault. She recommended that Defendant NOPD terminate Defendant Officer Rhea for his conduct.

23.

Plaintiff Tyra Perkins never received a response from the Defendant NOPD.

## JURISDICTION AND VENUE

### 24.

Jurisdiction in proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. §1983. This Court has authority to award attorney's fees pursuant to 42 U.S.C. §1988.

### 25.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this complaint happened in this district.

### 26.

***Defendant City of New Orleans' Role in Causing Plaintiff's Injuries***

Defendant NOPD, which employed Defendant Officer Rhea, is a department within the Defendant City. Defendant City is also responsible for the conduct that resulted in Plaintiff Tyra Perkins's injuries. Defendant City is also responsible for the conduct that resulted in Plaintiff Tyra Perkins' injuries.

### 27.

Defendant NOPD, controlled by Defendant City, has a pattern of failing to discipline officers for using excessive force, amounting to a *de facto* custom. A federal consent decree was implemented because the pattern is pervasive, and this police department has failed to discipline use of excessive force among its officers even in circumstances more egregious than the situation at issue here.[2] Defendant NOPD permitted a culture of impunity to fester with respect to its officers' use of excessive force. This *de facto* custom directly caused Plaintiff Tyra Perkins's injuries at the hands of Defendant Officer Rhea. Given the dim prospect of facing any

---

[2]        https://nola.gov/getattachment/NOPD/NOPD-Consent-Decree/Consent-Decree.pdf/

consequences for his actions, Defendant Officer Rhea proceeded to use excessive force against Plaintiff Tyra Perkins. And he was right: the Department did nothing to address Tyra Perkins's complaint about Defendant Officer Rhea's use of excessive force against her.

28.

Defendant NOPD completely failed to train and supervise its officers on how to comply with their clear constitutional duty not to use excessive force when they engage in crowd control at the scene of a reported crime. Defendant NOPD should have known to a high degree of certainty that its officers would be placed in recurring situations where they investigate crimes and engage in crowd control. Similarly, Defendant NOPD should have known to a high degree of certainty that its officers would lack the legal knowledge necessary to avoid the application of excessive force in that situation without training and supervision specific to the issue of crowd control. The NOPD's failure to train and supervise its officers on this issue thus amounts to deliberate indifference of Plaintiff Tyra Perkins's Fourth Amendment right to be free from excessive force.

29.

Unlike other excessive-force fact patterns, in this circumstance, there was no "split-second judgment" or "tense, uncertain, and rapidly evolving situation" that could justify deference to the officer's judgment on how much force was necessary in the situation. Simply put, a fully cooperative citizen, who is not even suspected of a crime but approaching a crime scene, does not need the heightened restraint of being forcibly picked up, carried several feet away from the scene, and body-slammed to the ground. In this textbook situation, Defendant Officer Rhea should have been trained on how to maintain control of a crowd at a crime scene without violating a citizen's constitutional rights. In this case, such training would have called

for Defendant Officer Rhea to use words and not excessive force to control the Plaintiff Tyra Perkins.

## **FIRST CAUSE OF ACTION**

### **42 U.S.C. §1983 – Excessive Force in Violation of the Fourth Amendment**

30.

Plaintiff Tyra Perkins hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

42 U.S.C. §1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

31.

Defendant Officer Rhea deprived Plaintiff of clearly established rights secured to her under the United States Constitution – specifically the Fourth Amendment rights to be free from unreasonable seizures and to be free from the use of excessive force against one's person. Defendant Officer Rhea's excessive use of force in removing Plaintiff Tyra Perkins from the crime scene was unreasonable. Defendant Officer Rhea was aware that Plaintiff Tyra Perkins was not a suspect in any crime because she was allowed to leave the store. In fact, she was shoved out of the door by another NOPD officer who put her into harm's way from Defendant Officer Rhea. He could observe that she was not a part of the investigation. Despite this awareness, Defendant Officer Rhea nonetheless grabbed Plaintiff, carried her several feet from the restaurant, and body slammed her to the ground (concrete street). This application of force

was disproportionate to the circumstances because the Plaintiff Tyra Perkins was not under investigation, not under arrest, and posed no threat or danger to the officer or anyone else and was not attempting to resist arrest or attempting to flee.

32.

Defendant Bystander Officers failed to take any action to prevent harm to Plaintiff Tyra Perkins, and thereby proximately caused excessive force to be inflicted upon Plaintiff that resulted in a constitutionally actionable injury. Defendant Bystander Officers are jointly and severally liable along with Defendant Officer Rhea for Plaintiff Tyra Perkins's injuries. Any reasonable police officer in the position of Defendant Officer Rhea or Defendant Bystander Officers would have known that the force being used against Plaintiff Tyra Perkins was unconstitutional.

33.

Any reasonable police officer in the position of Defendant Officer Rhea or Defendant Bystander Officers would have known that they had a duty to take reasonable measures to prevent harm to Plaintiff Tyra Perkins.

34.

Plaintiff Tyra Perkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

35.

In depriving Plaintiff Tyra Perkins of her rights under the United States Constitution, Defendant Officer Rhea and Bystander Officers acted under color of law in their respective capacities as NOPD police officers, and their actions and omissions were conducted within the

scope of their respective official duties or employment. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 – Failure to Train and Supervise
### (As to Defendant City of New Orleans)

36.

Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

37.

The Defendant NOPD is a department within the Defendant City, a named Defendant in this case.

38.

At all times relevant to this action, Defendant City had policymaking authority and otherwise controlled the training and supervisory practices of NOPD.

39.

Defendant City has a policy, practice and custom of failing to train and supervise police officers with respect to a clear constitutional duty implicated in a recurrent situation that police officers are certain to face—i.e., dealing with family members who appear at crime scenes, who pose no threat or risk of harm, flight and who, to the knowledge of the arresting officer, are not under investigation or under arrest.

40.

Defendant City should have known that Defendant NOPD officers would be placed in such a recurrent situation. Defendant City should have known that, in such a situation, its officers have a clear constitutional duty to avoid excessive force by controlling family members who

arrive at crime scenes. Defendant City should have known that its officers would lack the legal knowledge necessary to avoid the application of excessive force in that situation without training and supervision, including on the issue of dealing with family. members who appear at crime scenes.

41.

Upon information and belief, officers employed by Defendant City have a history of numerous complaints related to abusive handling of citizens. This pattern of violations made plainly obvious the need for training and supervising officers on how to avoid using excessive force during crowd control situations at crime scenes.

42.

Through the adoption of this policy, practice and custom of failing to train and supervise its police officers to prevent the use of excessive force, Defendant City acted with deliberate indifference to the clearly established rights secured to Plaintiff under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and the use of excessive force against one's person.

43.

By engaging in acts of excessive force against Plaintiff Tyra Perkins that resulted in injuries to her person, Defendant Officer Rhea was acting pursuant to, and within the scope of, Defendant City's policies, practices, and customs of failing to train and supervise New Orleans Police Department officers.

44.

By failing to intervene to prevent acts of excessive force against Plaintiff that resulted in injuries to her person, Defendant Bystander Officers were acting pursuant to, and within the

scope of, Defendant City's policies, practices, and customs of failing to train and supervise New Orleans Police Department officers.

45.

Defendant City's policies, practices, and customs of failing to train and supervise New Orleans Police Department officers were the moving force and the proximate and producing cause of Plaintiff Tyra Perkins's injuries.

46.

Due to the injuries suffered by Plaintiff Tyra Perkins, she is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of Defendants' unlawful conduct, Plaintiff Tyra Perkins has incurred special damages, including expenses related to the disability caused by her injuries. She may continue to incur other expenses and other special damages, in amounts to be established at trial.

47.

Plaintiff Tyra Perkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

48.

In depriving Plaintiff Tyra Perkins of her rights under the United States Constitution, Defendant City acted under color of law in its capacity as a municipal entity organized under the laws of Louisiana, and its actions and omissions were conducted within the scope of Defendant City's official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – Failure to Discipline**
**(As to Defendant City of New Orleans)**

49.

Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

50.

At all times relevant to this action, Defendant City had policymaking authority with respect to the disciplinary practices of Defendant NOPD.

51.

Defendant City and Defendant NOPD have a *de facto* custom of failing to discipline police officers who use excessive force.

52.

Publicity regarding Defendant NOPD officers' use of excessive force while interacting with citizens put Defendant City on actual or constructive notice of the constitutional violations resulting from its de facto custom of failing to discipline officers for using excessive force.

53.

In this case, Defendant City had such actual or constructive notice because Plaintiff Tyra Perkins filed a formal complaint describing Defendant Officer Rhea's use of excessive force against her.

54.

Defendant City failed to discipline Defendant Officer Rhea for use of excessive force against Plaintiff Tyra Rhea.

55.

Defendant City adopted official policies, practices and customs that provided for the failure to supervise and discipline Defendant NOPD officers when they use excessive force. Defendant City accordingly acted with deliberate indifference to the clearly established rights secured to Plaintiff Tyra Rhea under the United States Constitution, specifically the Fourth Amendment rights to be free from unreasonable seizures and free from the use of excessive force against one's person.

56.

By engaging in acts of excessive force against Plaintiff Tyra Rhea that resulted in injuries to his person, Defendant Officer Rhea acted with impunity because of Defendant City's adoption of the aforementioned policies, practices, and customs.

57.

These policies, practices and customs were the proximate and producing cause of Plaintiff Tyra Perkins's injuries.

58.

Due to the injuries suffered by Plaintiff Tyra Perkins, she is entitled to compensatory, economic, and consequential damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff Tyra Perkins has incurred special damages, including expenses related to the disability caused by his injuries. She may continue to incur other expenses and other special damages, in amounts to be established at trial.

59.

Plaintiff Tyra Perkins is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

60.

In depriving Ms. Perkins of her rights under the United States Constitution, Defendant City acted under color of law in its capacity as a municipal entity organized under the laws of Louisiana, and its actions and omissions were conducted within the scope of Defendant City's official duties. This deprivation under color of law is actionable and may be redressed by 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### Louisiana State Law Claims for Assault, Battery, and Negligence
### (As to Defendants Officer Rhea and Bystander Officers)

61.

Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

62.

Plaintiff asserts violations of Louisiana state law by Defendant Officer Rhea and Bystander Officers under La. Rev. Stat. Ann. § 14:33, et seq. (battery), La. Rev. Stat. Ann. §14:36, et seq. (assault), La. Civ. Code Ann. art. 2315 (liability for acts causing damages), La. Civ. Code Ann. art. 2316 (negligence, imprudence or want of skill), and La. Code Crim. Proc. Ann. art. 220 (requiring the use of reasonable force in effecting a lawful arrest).

63.

The acts or omissions of these Defendants, as described herein, deprived Plaintiff Tyra Perkins of her rights under Louisiana state law and caused her the injuries and damages described in this Complaint.

**FIFTH CAUSE OF ACTION**
**Louisiana State Law Claim for Intentional Infliction of Emotional Distress**
**(As to Defendant Officer Rhea and Bystander Officers)**

64.

Plaintiff Tyra Perkins hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

65.

Plaintiff Tyra Perkins asserts violations of Louisiana law relative to intentional torts by Defendant Officer Rhea and Bystander Officers.

66.

Defendants acted intentionally, as described herein, to deprive Plaintiff Tyra Perkins of her rights under Louisiana state law and caused her the injuries and damages described in this Complaint.

67.

As a direct and proximate result of the intentional acts of Defendant Officer Rhea and Bystander Officers described herein Plaintiff Tyra Perkins has experienced emotional and psychological injuries—including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Due to traumatic nature of the event and the injuries she suffered, Ms. Perkins has begun taking under doctors' care for physical injuries and emotional distress.

68.

Defendant Officer Rhea and Bystander Officers engaged in extreme and outrageous conduct and acted maliciously and with specific intent to oppress and harm Plaintiff Tyra Perkins or with reckless disregard for the consequences of their actions and omissions.

## SIXTH CAUSE OF ACTION
### Louisiana State Law Claims
### (As to Defendant City of New Orleans)

69.

Plaintiff Tyra Perkins hereby incorporates by reference all other paragraphs of this

Complaint as if fully set forth herein.

70.

Plaintiff Tyra Perkins asserts violations of Louisiana law by Defendant City under La.

Civ. Code Ann. art. 2317 (acts of others); La. Civ. Code Ann. art. 2320 (acts of servants); La.

Rev. Stat. Ann. §14:33, et seq. (battery), La. Rev. Stat. Ann. § 14:36, et seq. (assault), La. Civ.

Code Ann. art. 2315 (liability for acts causing damages), La. Civ. Code Ann. art. 2316

(negligence, imprudence or want of skill), La. Code Crim. Proc. Ann. art. 220 (requiring the use

of reasonable force in effecting a lawful arrest).

71.

Accordingly, as a matter of Louisiana law, Defendant City is vicariously liable for all

conduct of, or attributable to, Defendant Officer Rhea and Bystander Officers.

## **JURY DEMAND**

72.

Plaintiff Tyra Perkins requests a trial by jury pursuant to Rule 38 of the Federal Rules of

Civil Procedure.

Dated: March 2, 2023

Respectfully Submitted:

*/s/ Suzette P. Bagneris*

_____
Suzette P. Bagneris (LSBA No. 22241)
Emile A. Bagneris, III (LSBA No. 22240)
1929 Jackson Avenue
New Orleans, Louisiana 70113
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@bagnerislawfirm.com
*Attorneys for Plaintiff*


PLEASE SERVE

KAJA RHEA
New Orleans Police Department
6th Police District
1930 Martin Luther King Drive
New Orleans, Louisiana 70113

THE CITY OF NEW ORLEANS,
Through City Attorney Donesia D. Turner
1300 Perdido Street
Suite 5E03
New Orleans, Louisiana 70112

NEW ORLEANS POLICE DEPARTMENT
Through its Interim Superintendent Michelle M. Woodfork
715 South Broad Street
New Orleans, Louisiana 70119